**James Edward KENNEDY, Petitioner-Appellant,**

v.

**Harold J. CARDWELL, Warden, Respondent-Appellee.**

No. 72–2054.

United States Court of Appeals, Sixth Circuit.

Argued April 4, 1973.

Decided Oct. 30, 1973.

Michael E. Geltner, Bruce Jacob, Columbus, Ohio, on brief, for petitioner-ap-

pellant; Joe McKeever, Salem, Ore., R. Raymond Twohig, Jr., Columbus, Ohio, of counsel.

William J. Brown, Atty. Gen. of Ohio, Leo J. Conway, Asst. Atty. Gen., Columbus, Ohio, on brief, for respondent-appellee.

Before WEICK, MILLER and KENT,* Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This is an appeal by James Edward Kennedy, a state prisoner, from the district court's denial of a writ of habeas corpus. Numerous issues are raised by the petitioner but only one issue requires detailed discussion.

We are met with the question whether shackling [1] the petitioner to a uniformed deputy sheriff at his two state court jury trials denied him a fair and impartial trial by infringing the presumption of innocence in contravention of the fourteenth amendment's due process clause of the Federal Constitution. The events preceding Kennedy's trials began in February 1964, when he was indicted by the grand jury in Cuyahoga County, Ohio, for armed robbery. In September 1964, the petitioner was transferred from a federal institution in Illinois, where he was incarcerated under an unrelated charge, to the Cuyahoga County Jail to await trial on the armed robbery charge. On November 10, 1964, the petitioner, along with several other jail prisoners, sawed through the jail cell bars and escaped. This incident led to the defendant's indictment on December 11, 1964, for escaping from jail and rendering a jail less secure.

Upon Kennedy's capture about a year after he escaped, he was returned to a federal prison in Pennsylvania. Approximately one and one half years later he was removed to Ohio to stand trial on all three state charges. The first trial, for armed robbery, was apparently scheduled to commence on July 24, 1967, but on that day the state requested and received a continuance until the following day when the trial actually began. On July 24, however, defense counsel addressed the question of courtroom procedure since the defendant had been brought into court and seated at the defense table handcuffed to a uniformed deputy sheriff. A discussion on the record ensued among the attorneys, the court, the defendant and a deputy sheriff, but no sworn testimony was received by the court.

The defendant's attorney stated to the court that at several pretrial hearings before the court shackles had not been necessary, that the defendant had behaved as a gentleman and that he had even taken the stand at one such hearing.[2] Defense counsel then asserted that it was improper to bring a defendant to trial in such restraints unless there was an affirmative showing by the state of the necessity of the measure. The prosecutor responded that although he did not have the defendant's record before him at that time, it indicated that Kennedy had escaped from the Ohio Reformatory in Mansfield, Ohio, and also that he had escaped in 1964 from the Cuyahoga County Jail. He then declared: "I think that it is only proper that certain precautions are taken to see that such a thing does not happen again."

---

* Judge W. Wallace Kent died May 18, 1973.

1. The term "shackling" is used in this opinion to mean all forms of handcuffs, leg irons, restraining belts and the like. This is the same meaning attributed to the word in ABA Standards, Trial by Jury, 93–94, § 4.-1(c) (Approved Draft 1968).

2. The defendant's testimony at the evidentiary hearing in federal court on the writ of

habeas corpus indicates that in March of 1967 he appeared twice in federal district court on preliminary matters in connection with charges for escaping from federal custody and neither time did he appear in shackles. This charge arose out of the same escape he was indicted for in Ohio since the defendant was in federal custody at the time.

The Chief Deputy Sheriff then spoke to the court, referring to Kennedy's "highly escaping abilities," and requested the court to give the Sheriff permission to use every precaution to insure that the defendant was secured during the trial. In response to the court's inquiry concerning what restraints he suggested, the Deputy asserted that handcuffing the defendant to a deputy was necessary. The Chief Deputy then stated: "We do not have maximum security in this Court, no bars as such to restrain him from leaving here because he could very easily without being manacled break for one of these exits, and it will require a numerous amount of deputies in the court to insure he will remain in court during this trial." The court took the matter under advisement until the next morning when it ruled:

> Upon the record of this defendant, and further taking into consideration the nature of the charge herein and the experience of our police officials with the defendant together with all other relevant facts and circumstances, including but not limited to the somewhat desperate situation involving the temperment and personal characteristics of the defendant, the Court believes and does find that the shackling of the defendant at all times during trial is necessary to prevent violence and escape.

The court gave the defendant the option to have handcuffs or leg-irons. The court also stated that its ruling was effective for both the armed robbery trial and the trial on the escape charges.

The armed robbery trial proceeded and the jury found the defendant guilty.[3] The second trial, for escaping from jail and rendering a jail less secure, also before a jury, commenced immediately after the first and again the defendant was found guilty. The defendant appealed his convictions in the state courts. Being denied relief, he sought habeas corpus in the court below.

We start our analysis with the due process clause of the fourteenth amendment. A principal ingredient of due process is that every criminal defendant is entitled to a fair and impartial trial. Massey v. Moore, 348 U.S. 105, 108, 75 S.Ct. 145, 99 L.Ed. 135 (1954). See Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). In order for a defendant to receive a fair and impartial trial,

> [t]he principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law. Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481 (1895).[4]

Thus it necessarily follows that a criminal defendant is generally entitled to the physical indicia of innocence. United States v. Samuel, 431 F.2d 610, 614 (4th Cir. 1970). As the Supreme Court of Colorado stated in Eaddy v. People, 115 Colo. 488, 492, 174 P.2d 717, 718–719 (1946).

> the presumption of innocence requires the garb of innocence, and regardless of the ultimate outcome, or of the evidence awaiting presentation, every defendant is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man. . . .

The case law dealing with the physical indicia of innocence, as it pertains to

---

3. After final argument defense counsel stated for the record that during the entire trial the defendant had been handcuffed to a uniformed deputy and that two deputies and one United States Marshal were present.

4. The presumption of innocence is not specifically mentioned in the Constitution but it is recognized as a component of due process.

See Bentley v. Crist, 469 F.2d 854 (9th Cir. 1972); Hernandez v. Beto, 443 F.2d 634 (5th Cir. 1971); United States v. Thoresen, 428 F.2d 654 (9th Cir. 1970); Government of Virgin Islands v. Lake, 362 F.2d 770 (3rd Cir. 1966). Cf. Deutch v. United States, 367 U.S. 456, 81 S.Ct. 1587, 6 L.Ed.2d 963 (1961).

physical restraints during the criminal trial process, may be divided into distinct factual categories. Once the cases are classified, even though each grouping is factually diverse, certain principles emerge which pervade the entire body of law making comparisons and analogies particularly apt. Also the cases within each group cite as direct authority cases within another category which reveal many contradictions within and among the various classifications, and although the same general principles control the practical application of the general rule is quite different. For this reason a discussion of the different types of cases dealing with the garb of innocence helps in analyzing the case before us.

The first category of the "garb of innocence" cases includes those involving a defendant who stands trial in shackles.[5] *See, e. g.,* United States v. Kress, 451 F.2d 576 (9th Cir. 1971); United States v. Thompson, 432 F.2d 997 (4th Cir. 1970); United States v. Samuel, 431 F.2d 610 (4th Cir. 1970); Woodards v. Cardwell, 430 F.2d 978 (6th Cir. 1970); Loux v. United States, 389 F.2d 911 (9th Cir. 1968). The principle controlling this situation was stated by this Court in Woodards v. Cardwell, 430 F.2d 978, 982 (6th Cir. 1970).

The rule that a prisoner brought into court for trial is entitled to appear free from all bonds or shackles is an important component of a fair and impartial trial. And shackles should never be permitted except to prevent the escape of the accused, to protect everyone in the courtroom, and to maintain order during trial.

The historical development of the rule that a defendant should be unfettered while standing trial, except in extraordinary instances, has been traced from Virgil and the Bible through the Magna Charta and the great English legal scholars—Bracton, Coke and Blackstone—into our own jurisprudence. *See* Krauskopf, Physical Restraint of the Defendant in the Courtroom, 15 St. Louis U.L.J. 351 (1971). Although the original reasons underlying the English rule are not precisely clear,[6] the American cases reveal four reasons why a defendant should not be shackled during his criminal trial. The most prevalent and important justification for the rule in this country is illustrated by and emanates from the early Missouri case of State v. Kring, 64 Mo. 591, 593 (1877), where the Missouri Supreme Court stated:

> When the court allows a prisoner to be brought before a jury with his

5. A separate group of cases involving the shackling of a defense witness needs to be distinguished from the situation where the defendant himself is physically restrained. *See, e. g.,* United States v. Ecquer, 459 F.2d 431 (7th Cir. 1972); McDonald v. United States, 89 F.2d 128 (8th Cir. 1937). *See generally* Annot., 75 A.L.R.2d 762 (1961); ABA Standards, Trial by Jury, 91–97, § 4.1 (Approved Draft 1968). The general rule for shackling witnesses is that a defendant has a right to have his witnesses appear free of shackles, except in special circumstances where there is evident danger of escape or harm to individuals in the courtroom. The decision whether to shackle witnesses is left to the sound discretion of the trial judge. The reason underlying the rule is the inherent prejudice to the defendant since it is likely the jury will suspect the witness's credibility. The prejudice factor toward the defendant, although much less than the situation where the defendant is shackled, provides a valid point of comparison even though the shackled witness cases do not directly affect the presumption of innocence.

6. One author suggests that the old English cases and legal authorities, when closely checked, reveal that the origins of the rule against trying a defendant in shackles was not prejudice to the defendant, as is commonly supposed, but rather that punishment should never be inflicted before guilt was determined and that no torment should affect the reasoning of the accused which would abridge his ability to defend against the charge. Krauskopf, Physical Restraint of the Defendant in the Courtroom, 15 St. Louis U.L.J. 351, 351–355 (1971).

Apparently the first reported American shackling case was People v. Harrington, 42 Cal. 165 (1871), and this case comports with the justifications from the English precedents.

hands chained in irons, and refuses, on his application, or that of his counsel, to order their removal, the jury must necessarily conceive a prejudice against the accused, as being in the opinion of the judge a dangerous man, and one not to be trusted, even under the surveillance of officers.

The second reason underlying the rule was initially expressed in the first American shackling case, People v. Harrington, 42 Cal. 165, 168 (1871), where the California Supreme Court declared:

Should the Court refuse to allow a prisoner on trial for felony to manage and control, in person, his own defense, or refuse him the aid of counsel in the conduct of such defense, he would manifestly be deprived of a constitutional right, and a judgment against him on such trial should be reversed. In my opinion any order or action of the Court which, without evident necessity, imposes physical burdens, pains, and restraints upon a prisoner during the progress of his trial, inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense and especially would such physical bonds and restraints in like manner materially impair and prejudicially affect his statutory privilege of becoming a competent witness and testifying in his own behalf.

This justification was also reiterated in the second American shackling case, State v. Kring, *supra,* where the court, after stating the inherent prejudice flowing to the defendant when shackles are employed, added: "Besides, the condition of the prisoner in shackles may,

to some extent, deprive him of the free and calm use of all his faculties." 64 Mo. at 593.[7]

Closely allied to the notion of abridging the defendant's ability fully to defend himself is the idea originating in the English cases that the defendant should not be in any physical pain or torment before he is found guilty. *See* State v. Williams, 18 Wash. 47, 50 P. 580 (1897). Today with the use of modern restraining techniques, the validity of this reasoning is attenuated, but the fact that shackles may materially interfere with the defendant's ability to consult orally or communicate in writing with defense counsel during trial remains a valid reason for the general rule. *See* People v. Mendola, 2 N.Y.2d 270, 159 N.Y.S.2d 473, 140 N.E.2d 353 (1957). The Supreme Court recognized this problem in Illinois v. Allen, 397 U.S. 337, 344, 90 S. Ct. 1057, 1061, 25 L.Ed.2d 353 (1970), where it said:

Moreover, one of the defendant's primary advantages of being present at the trial, his ability to communicate with his counsel, is greatly reduced when the defendant is in a condition of total physical restraint.

The last reason supporting the rule against shackling the defendant in the courtroom is that it detracts from the dignity and decorum of the judicial process. In this regard the Supreme Court stated in Illinois v. Allen, *supra,* that "the use of this technique [shackling and gagging] is itself something of an affront to the very dignity and decorum of the judicial proceedings that the judge is seeking to uphold." 397 U.S. at 344, 90 S.Ct. at 1061.[8]

---

7. *See also* State v. Roberts, 86 N.J.Super. 159, 206 A.2d 200 (1965).

8. Mr. Justice Brennan, in his concurring opinion in Illinois v. Allen, 397 U.S. 337, 350–351, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (1970), stated in this regard: "It offends not only the judicial dignity and decorum, but also that respect for the individual which is the lifeblood of the law." This reason for the rule against shackling defendants at trial is purely policy based on lessening the dignity of the judicial forum and has no direct effect upon a defendant.

Few of the recent lower court federal cases in this category mention any reason for the rule except the prejudice factor when faced with the issue. Although prejudice to the defendant is the most obvious and serious disability suffered by the shackled defendant, the ability of the accused to have the untrammeled use of his mental faculties and

Two lines of decision appear in the federal cases in regard to the prejudice inhering to the shackled defendant. The most prevalent view, and clearly the better approach, are those cases recognizing the obvious fact that when a defendant is tried in shackles before a jury it is inherently prejudicial or prejudicial per se. *See, e. g.,* United States v. Samuel, 431 F.2d 610 (4th Cir. 1970) ; Woodards v. Cardwell, 430 F.2d 978 (6th Cir. 1970) ; Loux v. United States, 389 F.2d 911 (9th Cir. 1968).[9] Because of the inherent prejudice to the accused the earliest cases established that the burden was on the state to show the necessity of any extreme physical security measures. *See* State v. Kring, 64 Mo. 591 (1877) ; People v. Harrington, 42 Cal. 165 (1871). *See also* State v. Roberts, 86 N.J.Super. 159, 206 A.2d 200 (1965). The decision to shackle a defendant rests in the first instance in the discretion of the trial judge and the test on review is whether the trial judge has abused this discretion. The recent cases establish that in order for an appellate court to undertake any meaningful review at least the reasons for the trial judge's actions should be placed on the record. *See, e. g.,* United States v. Samuel, 431 F.2d 610 (4th Cir. 1970). Several courts, including this one, have recognized that the physical indicia of innocence are so essential to a fair trial that the better practice is to hold a hearing so that factual disputes may be resolved and evidence of the facts surrounding the decision are made a part of the record. *See, e. g.,* Woodards v. Cardwell, 430 F.2d 978 (6th Cir. 1970).

A distinct minority of federal cases do not explicitly recognize the prejudice to the accused when he is tried in shackles, or if these cases are read implicitly to perceive the prejudice factor they nevertheless state that the mere fact of shackling is not sufficient to deny a fair trial. *See* United States v. Kress, 451 F.2d 576 (9th Cir. 1971) ; [10] McDonald v. United States, 89 F.2d 128 (8th Cir. 1937).[11] Which ever way these cases are read, the decisions state that the defendant must show something more than the mere fact of shackling for reversal.[12]

Closely allied to the first group of cases are those involving the obstreperous or disruptive defendant during the actual trial. This group of cases is really a subgroup within the first category since the defendant appeared before the jury during the actual trial in physical restraints, although the restraints were not employed initially but became necessary either for security purposes to prevent the defendant from harming individuals in the courtroom, *see, e. g.,* United States v. Bentvena, 319 F.2d 916 (2d Cir. 1963), or the defendant was so insulting, abusive and disruptive that an orderly trial was made impossible. *See,*

his ability to consult freely with defense counsel certainly deserve mention. Therefore logic would dictate that a jury trial is not the only circumstance when a shackled defendant would be hurt (*See* ABA Standards, Trial by Jury, 94, § 4.1(c) (Approved Draft 1968)) but the cases are almost uniformly to the opposite effect. *See, e.g.,* Sparkman v. State, 27 Wis.2d 92, 133 N.W. 2d 776 (1965).

9. In Woodards v. Cardwell, 430 F.2d 978, 982 (6th Cir. 1970), this Court stated: "All authorities agree that it is prejudicial for a defendant on trial to be shackled in the courtroom." This statement is an overstatement but it does represent the majority view.

10. This case is in conflict with other earlier decisions within the same circuit, principally Loux v. United States, 389 F.2d 911 (9th Cir. 1968).

11. McDonald v. United States, 89 F.2d 128 (8th Cir. 1937), involved a shackled witness (See *supra* note 5) but the court considered the case as if the defendant himself was shackled during the trial. Unfortunately the court's language has been picked up and applied to cases where the defendant was in fact shackled.

12. These decisions do not state how the defendant is to show prejudice and the rule that a jury cannot impeach its own verdict would appear to operate here to foreclose any attempt by the defendant to show he was in fact prejudiced.

*e. g.,* Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

In *Allen, supra,* the Supreme Court was faced with the issue of the sixth amendment right of a defendant to be present at trial in the context of a disorderly defendant who, was ejected from the courtroom by the trial judge. The Court recognized the discretion of the trial judge in dealing with such conduct and held that the defendant can lose his right to be present at trial if, after warnings by the trial judge, he continues the disruptive behavior. The Court explained three constitutionally permissible ways for dealing with such a situation: 1) binding and gagging the defendant; 2) citing him for contempt; and 3) expelling him from the courtroom.

In dealing with the matter of physically restraining the defendant during the trial, the Court emphasized that such a technique was prejudicial to the defendant, was an affront to the dignity of the judicial proceedings and reduced the ability of the defendant to communicate with counsel. The Court noted:

> But even to contemplate such a technique, much less see it, arouses a feeling that no person should be tried while shackled and gagged except as a *last resort.* 397 U.S. at 344, 90 S.Ct. at 1061 [Emphasis added].[13]

This language is important because the reasons behind not shackling a defendant except as a last resort are the same in the context of a defendant's right to a fair and impartial trial as they are in the context of a defendant's sixth amendment right to be present at trial.

■ A second category of cases involving the indicia of innocence pertains to an excessive number of guards in the courtroom during a criminal trial. *See, e. g.,* Dorman v. United States, 140 U.S. App.D.C. 313, 435 F.2d 385 (1970); United States v. Greenwell, 418 F.2d 845 (4th Cir. 1969); Burwell v. Teets, 245 F.2d 154 (9th Cir. 1957). The general rule derived from these decisions is that a defendant has a right to be tried in an atmosphere free of partiality created by the use of excessive guards except where special circumstances, which in the discretion of the trial judge, dictate added security precautions.[14] One reason underlying this right is that guards seated around or next to the defendant during a jury trial are likely to create the impression in the minds of the jury that the defendant is dangerous or untrustworthy. *See* McCloskey v. Boslow, 349 F.2d 119 (4th Cir. 1965); Dennis v. Dees, 278 F.Supp. 354 (E.D.La.1968). Also the placement of guards in relation to the defendant could materially interfere with his ability to consult with counsel. However, the use of guards for security purposes, when wisely employed, provides the best means for protecting a defendant's fair trial right and only in rare cases would greater security precautions be warranted.[15] Since

---

13. In a concurring opinion Mr. Justice Brennan stated:

> However, I also agree with the Court that these three methods are not equally acceptable. In particular, shackling and gagging a defendant is surely the least acceptable of them. Illinois v. Allen, 397 U.S. 337, 350, 90 S.Ct. 1057, 1064, 25 L. Ed.2d 353 (1970).

The Seventh Circuit in United States v. Esquer, 459 F.2d 431, 433 (7th Cir. 1972), a case involving the shackling of a defense witness (See *supra* note 5), stated:

> While the Court in *Allen* allowed trial judges great latitude in determining the measures to be used to maintain order in their courtrooms, it expressed a view that judges should employ the least drastic means to reach that end. We agree with the appellant that the shackling of witnesses is an unfortunate and undesirable practice which should be employed only in cases of *extreme* need. [Emphasis added.]

14. The scope of this right is not clearly defined since only one case has been found where relief was granted because of excessive guards. Dennis v. Dees, 278 F.Supp. 354 (E.D.La.1968), as interpreted by the Fifth Circuit in United States v. Henderson, 472 F.2d 556 (5th Cir. 1973).

15. The District of Columbia Circuit, sitting en banc, in Dorman v. United States, 140 U.S.App.D.C. 313, 435 F.2d 385 (1970), stated concerning the use of guards: "he

guards can be strategically placed in the courtroom when more than normal security is needed and can be hidden in plainclothes, the jury never needs to be aware of the added protection so that no prejudice would adhere to the defendant. These cases provide an excellent point of comparison since they illustrate oftentimes extreme situations which were adequately handled without the need for the much more drastic and prejudicial step of shackling.

The third group of cases includes those where the defendant was seen in shackles for a short period of time either in the courtroom or somewhere in the courthouse by the jury, by one or more jurors or by veniremen. *See, e. g.,* United States v. Figueroa-Espinoza, 454 F.2d 590 (9th Cir. 1972); United States v. Leach, 429 F.2d 956 (8th Cir. 1970); Hardin v. United States, 324 F.2d 553 (5th Cir. 1963); Way v. United States, 285 F.2d 253 (10th Cir. 1960); Bayless v. United States, 200 F.2d 113 (9th Cir. 1952); Blaine v. United States, 78 U.S. App.D.C. 64, 136 F.2d 284 (1943). This group of cases is the least consistent and is often characterized by a rather cavalier attitude by the courts that such contentions are frivolous. *See, e. g.,* United States v. Hamilton, 444 F.2d 81 (5th Cir. 1971). The pure shackling cases, those where the defendant was actually tried in chains, inevitably cite as direct authority this category of cases and this has in large measure led to confusing the law in this area. *See, e. g.,* United States v. Kress, 451 F.2d 576 (9th Cir. 1971).

The courts in this third group generally refer to the rule that a defendant has a right to appear before a jury free of shackles except where the nature of the accused or the danger of escape make physical restraints necessary. However, because of the distinct factual circumstances of this third group,[16] all the reasons underlying the general rule against shackling a defendant during a criminal trial are not present. The only danger to the accused in this group is the possible prejudice such a brief incident may engender. The degree of prejudice to the defendant in this situation is certainly much less than in the situation where the accused sits throughout his trial before the jury in shackles. Therefore, the only real question in this class of cases is the degree of prejudice affecting the defendant's fair trial right and the general rule means little except as a policy matter.

The majority of cases, if read literally, state that such a brief and fortuitous incident is not prejudicial and requires an affirmative showing of prejudice by the defendant. *See, e. g.,* United States v. Leach, 429 F.2d 956 (8th Cir. 1970); Hardin v. United States, 324 F.2d 553 (5th Cir. 1963); Blaine v. United States, 78 U.S.App.D.C. 64, 136 F.2d 284 (1943).[17] Although this view to some extent ignores reality, the other reasons behind the general rule against shackling a defendant clearly do not apply here although it must be recognized that some prejudice flows to the defendant in this situation. This fact has been perceived by the First Circuit. *See* United States v. Larkin, 417 F.2d 617 (1st Cir.

---

[the judge] should shackle the defendants in court, whether with chains or with marshals, only on a *clear showing* that the defendants pose an immediate threat to the peace and order of the trial." [Emphasis added].

16. Since veniremen or jurors see the defendant outside the actual trial in this group of cases, the individuals having custody of the accused are most often left unguided in the means employed to secure that end and the trial judge is rarely involved in this decision. *But see* United States v. Bankston, 424 F.2d 714 (5th Cir. 1970). In fact several state courts have determined that the manner in which the accused is transported to and from the courtroom is within the discretion of the officer having custody of the defendant. *See, e.g.,* Marion v. Commonwealth, 269 Ky. 729, 108 S.W.2d 721 (1937). *Cf.* Kelley v. Oregon, 273 U.S. 589, 47 S.Ct. 504, 71 L.Ed. 790 (1927).

17. None of these cases suggests how the defendant is to meet his burden and the rule against a jury impeaching its own verdict would seem to preclude such a showing.

1969); O'Shea v. United States, 400 F. 2d 78 (1st Cir. 1968).[18]

The present case falls into the first category of cases and under the general rule that a fair trial demands that a defendant be tried free of bonds except in extraordinary circumstances. The test on appeal is whether the trial court abused its discretion in ordering Kennedy shackled during his two state court trials. Although abuse of discretion is a somewhat nebulous standard:

> [t]he term 'discretion' denotes the absence of a hard and fast rule. The Styria v. Morgan, 186 U.S. 1, 9, 22 S. Ct. 731, 46 L.Ed. 1027. When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by reason and conscience of the judge to a just result. Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L. Ed. 520 (1931).[19]

It follows as part of this definition that the exercise of discretion requires a fair knowledge and understanding of all the factual matters on which the decision is based. Woodards v. Cardwell, 430 F.2d 978, 982 (6th Cir. 1970).

The trial court's statement reveals that it was relying on "the record of this defendant" which incidentally included one previous escape and the Chief Deputy's assurance that petitioner had sawed the bars of his cell on a second occasion and had been absent for about a year. The court's statement indicates consideration of

the nature of the charge herein, and the experience of our police officials with the defendant together with all other relevant facts and circumstances, including but not limited to the somewhat desperate situation involving the temperament and personal characteristics of the defendant.

. . .

The court did of course have the nature of the charges before it—armed robbery and escape, as well as the opinions of the prosecutors and Chief Deputy Sheriff that some form of restraint was necessary. The court then found that the defendant should be shackled to prevent "violence and escape." While the cases have laid down no definite rule as to the exact form for an evidentiary hearing to determine whether physical restraint is necessary, we think that it is preferable, except in cases where the trial process is disrupted in the court's presence, that a formal hearing should be conducted with sworn testimony. In this way factual disputes may be resolved and a meaningful record preserved for an appeal or for collateral relief.

The district court in this case held an evidentiary hearing pursuant to the teachings of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In criminal trials, where physical restraints are to be employed, the district court on collateral attack should make factual findings concerning the following issues. First, is there factual support for the trial court's assertions pertaining to the record of the defendant, the desperate situation of the defendant, and his temperament and personal characteristics? Second, is the

---

18. In O'Shea v. United States, 400 F.2d 78 (1st Cir. 1968), the court recognized that, if untreated, the fact that some veniremen saw the defendant outside the courtroom in shackles could materially prejudice the accused. Therefore the court outlined the procedure to follow when such an incident occurs in order to correct it.

19. This phrase has been defined by the First Circuit in In re Josephson, 218 F.2d 174, 182 (1st Cir. 1954), as:

"Abuse of discretion" is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.

See Cohen v. Young, 127 F.2d 721, 725–726 (6th Cir. 1942).

state courtroom and courthouse physically laid out in such a manner that less drastic means of security would suffice? Third, is the physical condition of the defendant such as to reduce or eliminate the likelihood of escape or acts of violence, making less drastic security measures the most reasonable course? And fourth, does the trial court have available less prejudicial but adequate means of security, i. e., guards?

At this point we underscore the legal principles from the prior discussion within which the decision to shackle a defendant during trial should be made. Because every criminal defendant is entitled under the fourteenth amendment's due process clause to a fair and impartial trial there are four sound reasons underlying the general rule that a defendant should never be shackled during his trial before a jury except in extraordinary circumstances. Without repeating all of them, we note the inherent prejudice to the accused when he is cast in the jury's eyes as a dangerous, untrustworthy and pernicious individual from the very start of the trial. Therefore, only upon a *clear showing* of necessity should shackles ever be employed. One element of such necessity is that less drastic security precautions to prevent escape, even at some additional cost to the state, will not provide the needed protection. In light of the identity of reasons underlying the principle against shackling a defendant during a jury trial, and the principles for dealing with an obstreperous defendant during the trial outlined by the Supreme Court in Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), shackles should only be used as a last resort. Therefore, in our opinion, it is an abuse of discretion precipitously to employ shackles when less drastic security measures will adequately and reasonably suffice.

While we have taken this opportunity to enunciate principles which we think should govern the use at trial of prejudicial restraints, we are not persuaded that the district court was in error in finding that the state trial judge did not abuse his discretion in permitting the petitioner to be shackled to an officer.

The state trial court was advised by officers in position to know the facts of the two previous escapes of petitioner and it was inevitable that the jury would learn of these escapes at the trial. Loux v. United States, 389 F.2d 911, 919 (9th Cir. 1968).

It was not necessary in order to adopt security measures that such measures be based on the conduct of the prisoner at the time of trial; *Loux, supra,* at 919, 920, disapproving State v. Kring, 64 Mo. 591.

The trial court could reasonably place reliance on the statements of the Chief Deputy Sheriff who was responsible for security measures, and presumably had knowledge of necessary and proper procedures.

The trial court stated its reasons for requiring a physical restraint and counsel for petitioner did not request the court to permit him to cross-examine the Chief Deputy Sheriff to test the accuracy of his statements, or to offer any evidence to rebut the deputy's statements. Counsel also had the opportunity at the evidentiary hearing in the court below to offer testimony to establish that it was improper to order the handcuffing of the petitioner.

In a written opinion the district court discussed the evidence and determined therefrom that the state trial court did not abuse its discretion. It was found that while the petitioner had had a foot operation with a bone fusion, it was possible for him to run although with a limp. This finding was based upon petitioner's own medical evidence and refuted his comment to the state trial judge that he was unable to run.

The burden of proof was upon the petitioner in this habeas corpus proceeding to establish that his constitutional rights were violated by the manacling. Odell v. Hudspeth, 189 F.2d 300 (10th Cir. 1951). The petitioner has not sustained

this burden. Other questions raised by petitioner have been considered and are found to be without merit.

The judgment of the district court is therefore affirmed.