Calvin HARDEE, Petitioner-Appellant,

v.

Robert KUHLMAN, Acting Superintendent, Woodbourne Correctional Facility, Respondent-Appellee.

No. 871, Docket 78–2018.

United States Court of Appeals, Second Circuit.

Argued May 1, 1978.

Decided Aug. 7, 1978.

Robert W. Stieve, White Plains, N. Y. (The Legal Aid Society of Westchester County), for petitioner-appellant.

Robert A. Forte, Asst. Atty. Gen. of the State of N. Y., New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before MOORE, OAKES and GURFEIN, Circuit Judges.

MOORE, Circuit Judge:

Petitioner-appellant, Calvin Hardee ("Hardee"), comes into the federal court via the not-too-unusual habeas corpus route. His petition for a writ was denied without a hearing by Judge Charles L. Brieant of the Southern District of New York, from which denial Hardee appeals.

On April 27, 1976, Hardee was convicted by a jury in the Supreme Court of the State of New York, Westchester County, of the crime of manslaughter, second degree and sentenced to a prison term in a State Correctional Facility from zero to ten years, which he is now serving.

Hardee has availed himself of all procedures afforded by the State to correct alleged trial errors: first, to the Appellate Division, Second Department (judgment unanimously affirmed, 55 A.D.2d 858, 390 N.Y.S.2d 768), and second, by seeking leave to appeal to the New York Court of Appeals, which was denied (41 N.Y.2d 866, 393 N.Y.S.2d 1033, 362 N.E.2d 631). Certiorari was then denied by the Supreme Court of the United States (431 U.S. 958, 97 S.Ct. 2683, 53 L.Ed.2d 276 (1977)). Hardee now, in effect, seeks to have the federal courts review the trial and appellate processes of the State of New York for alleged violation of his rights under the United States Constitution in two respects: (1) the presence of armed guards in the courtroom during trial, one guard having been seated some three feet behind the defendant, one at the jury box, and the other at the courtroom entrance; and (2) alleged error in the instruction to the jury as to the burden of proof of establishing justification by way of self-defense.

## I.

After a bar room brawl, Hardee was shown to have pursued one of the participants and to have stabbed him with a knife causing his death. Although on the trial Hardee claimed that he had acted in self-defense, the jury convicted him of second degree manslaughter.

Before and during the trial, Hardee's counsel objected to the presence of uniformed guards in the courtroom[1] and suggested that the guards sit in the back of the room or wear civilian clothes. The trial judge honored this request to the extent that the guard nearest to Hardee was directed to sit no closer than three feet in back of him.

Hardee's argument as to the presence of the guards is premised on the alleged adverse effect on the jury that their presence might have had on his presumption of innocence and the creation of a belief that he was a dangerous person. In support of this argument Hardee cites cases where the defendant has been brought to trial in prison garb or handcuffed to a uniformed deputy sheriff. See Kennedy v. Cardwell, 487 F.2d 101 (6th Cir. 1973), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974), and cases cited and discussed therein.

The courts throughout the ages have endeavored to clothe all persons accused of crime in a "garb of innocence". However, such expressions used without practical application to the realities of a criminal trial are mere vacuities. The defendant is indicted by a Grand Jury (occasionally he is charged by information). The indictment advises the defendant of the crime or crimes with which he is charged. During their selection the jury is told the name of the accused and the nature of the crime. The "presumption of innocence" admonition is repeated frequently during the trial. Thus, there can be no doubt that the jury is aware of the defendant, the nature of the crime charged, and the presumption of innocence.

To preserve the presumption of innocence the jury is told that they are to disregard the charges in the indictment, the philippics of counsel, evidence which has been stricken, and even rulings by the court itself, in arriving at their verdict. They are told

---

1. Apparently it was the custom in that court that guards be stationed in the courtroom when a person charged with a crime, unable to make bail and in custody, was on trial. The guards, as a matter of routine, shifted in rotation their respective positions every fifteen minutes.

that a verdict of guilty must be based only on the facts presented to them which, in their minds, establish guilt beyond a reasonable doubt.

An assumption which by time-honored custom has been injected into the judicial process is that the instructions given by the court as to the elements of the crime, against which the jury will appraise the facts, will be followed by the jury. However, the courts have been realistic enough to recognize that, although not a part of the evidence, the presence of a defendant sitting before them hour after hour or day after day, clad in recognizable prison garb or handcuffed to a police officer or bound, gagged or shackled is bound to have an adverse effect on the jury in fairly weighing the evidence against such a defendant.[2]

■ It is against this background that Hardee's claim of lack of due process and equal protection must be assessed. He had been charged with murder. The State was entitled to require bail; he had not been able to post it—hence, he was properly in custody. He was brought to court clad in civilian apparel—no prison garb, no handcuffs, no visible signs of restraint. The stationing of a guard three feet behind him apparently did not interfere with private communication with counsel—at least there is no such claim made. As to the effect of the two other guards in the courtroom, the jury must have known that the presence of police officers in a courtroom was normal expectancy. If the concept of "law and order" is to be honored, it must be maintained by security forces. Here there was no ostensible display of unusual precaution which might have been interpreted as singling out this defendant as a particularly dangerous or guilty person. As to rotation of position, see note 1, this could only have been interpreted as normal routine. And there has been no showing that this practice was in any way related to this defendant or that it pointed to his guilt. We thus agree with the district court that Hardee's attempts to analogize the situation under which he was tried to the entirely different circumstances in the cited cases dealing with prison garb and shackling, fail.

## II.

Although on this appeal we are reviewing a decision denying a habeas corpus writ, we have carefully considered the trial court's charge. Appellant only takes issue with that portion relating to self-defense.

■ The specific defense of justification was charged as follows:

"Now the defendant here has interposed in laymen's terms the defense of self defense, or what is known in the law as the defense of justification. Justification, as set forth in the Penal Law, is a defense. The People have the burden of disproving such defense beyond a reasonable doubt." (A–84).

Then followed instructions as to what constituted "deadly physical force" and the circumstances under which it should be used.

2. *See, e. g., Gaito v. Brierley,* 485 F.2d 86, 88–89 (3rd Cir. 1973) (accepting majority view that "compelling a defendant to appear before a jury in his prison clothes unconstitutionally infringes his due process right to be presumed innocent"); *Hernandez v. Beto,* 443 F.2d 634 (5th Cir.), *cert. denied,* 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971) (same). *But see United States v. Dawson,* 563 F.2d 149 (5th Cir. 1977) (khaki clothing worn at trial bears "no characteristics which distinguish it as prison garb"; thus no constitutional violation). As to shackling and gagging, *see Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), in which the Supreme Court upheld the practice when necessary to control a defendant, but counseled that sound discretion should be exercised since "the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant . . . ." *Id.* at 344, 90 S.Ct. at 1061. *See also Kennedy v. Cardwell, supra,* 487 F.2d 101, 105–09, and cases discussed therein.

As Hardee points out, there have also been cases in which courts have suggested that "overguarding" could constitute a violation of the right to a fair trial. *See McCloskey v. Boslow,* 349 F.2d 119 (4th Cir. 1965) (allegation by state habeas petitioner that six armed guards were present during delinquency proceeding merits further inquiry to determine if trial judge has abused his discretion). However, the mere fact of guarding, as is true of the fact of shackling, has never been treated as a per se constitutional violation.

Even then the judge charged that the burden of disproof was on the People, saying:

"Thus, if you find that the People have disproved beyond a reasonable doubt that the defense of the defendant [sic] was justified in using deadly physical force . . . you may find the defendant guilty [enumerating the crime charged]. . . ." (A–86–87).

Stating the converse, the judge instructed:

"However, if you find that the People have failed to disprove beyond a reasonable doubt that the defendant was justified in using deadly physical force in defense of his person, you then must find the defendant not guilty of any of the counts submitted to you." (A–87).

As the result of an inquiry from the jury during its deliberations as to self-defense, the judge again charged:

"Justification, as set forth in the Penal Law, is classified as a defense. The Penal Law goes on further to say that the People have the burden of disproving such defense beyond a reasonable doubt.

"You will recall that I told you earlier that the burden is on the People. This burden never shifts to the defendant. There is no burden on the defendant to prove the justification. He may raise this as a defense, and then the burden is upon the People to disprove this defense beyond a reasonable doubt." (A–106–107).

During mid-morning of the following day, the judge gave further instructions on the question of justification, including the reading of Section 35.15 of the New York Penal Law.[3] (See A–118–19). A verdict of guilty of manslaughter, second degree, was returned just before 3:30 P.M. Any uncertainty which may have existed in their collective minds as to the law of justification must thus have been dispelled on the second day of deliberation.

■ Appellant is apparently satisfied with this "precise definition of justification" charge (Appellant's Br. p. 25) but claims that "it came too late". (*Id.* p. 27). We do not agree. Rather, we find, on the whole, that the charge given was fair, that, at least by the final reading, it was completely adequate to apprise the jury of the burden of proof,[4] and that its delivery to the jury was timely. On habeas corpus review, federal courts do not sit to oversee the exact manner in which a charge, fair in its entirety, is delivered. *See Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). We are satisfied that appellant was not denied any constitutional right to which he was entitled in the trial of his case.

\* \* \* \* \* \*

3. Penal Law §§ 35.15(1)(a) and (b), and (2)(a), —the portions read to the jury—provide:

§ 35.15 *Justification; use of physical force in defense of a person*
1. A person may, subject to the provisions of subdivision two, use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself or a third person from which he reasonably believes to be the use or imminent use of unlawful physical force by such other person, unless:
(a) The latter's conduct was provoked by the actor himself with intent to cause physical injury to another person; or
(b) The actor was the initial aggressor; except that in such case his use of physical force is nevertheless justifiable if he has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter persists in continuing the incident by the use or threatened imminent use of unlawful physical force; or

2. A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:
(a) He reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating; \* \* \*"

4. We believe that the charge conformed to the requirements of New York law relating to justification. The trial court did no more than to point up to the jury that a defendant who interposes a defense of justification must come forward with *some* evidence to put the defense in issue. *See People v. Sandgren,* 302 N.Y. 331, 335, 98 N.E.2d 460 (1951); *People v. McCarthy,* 110 N.Y. 309, 316, 18 N.E. 128 (1888). The burden of disproving the defense, however, remains with the People—as Hardee's trial judge adequately explained.

The order denying the writ of habeas corpus is affirmed.

Oakes, Circuit Judge (dissenting):

I dissent.

Appellant's defense—that he acted in self-defense—must have been fairly persuasive. The jury deliberated for quite a period of time (almost two days) despite the constant reminder of Hardee's dangerous propensities by the presence in the courtroom of three or four armed guards in uniform, one always directly behind the defendant. And even if a juror might ordinarily become accustomed to such security measures, in this instance the impact on the jury was exacerbated by the repeated rotation of that guard sitting directly behind the defendant. Imagine, the defense is self-defense and the defendant is evidently such a tough, dangerous person that he needs not only uniformed armed guards in the courtroom, but more guards than doorways. Additionally, the guard behind him must be relieved every few minutes, doubtless because of the stress and tension he is under by having to guard this dangerous criminal, er, defendant entitled to a presumption of innocence.

Has the defendant been disruptive? No. Has he at any time threatened to escape? No. Has he not been searched each day before entering the courtroom? No. Is he considered dangerous because of his conduct while confined in the Westchester County jail? No. The merit of appellant's claim becomes crystal clear from the negative answers to each of these questions which the record below reveals.

What has the appellant done, then, to justify this zealous guarding? Is it the nature of the offense with which he has been charged? Again the record tells us no. The state trial judge informs us that this guarding is imposed on all persons charged with a crime in Westchester County if they meet one condition: they must fail to make bail. Anyone who has the financial resources to make bail, however, is not so guarded. A different presumption of innocence, therefore, prevails in Westchester County, depending on the financial means of the particular defendant.

But this is not a claim of denial of equal protection of the laws. It is a claim of an unfair trial—a lack of procedural due process. In my view, the use of uniformed guards on a rotating basis with one guard directly behind the accused, absent some showing of necessity totally lacking here, was excessive and prejudicial. In the case of rights as fundamental as the presumption of innocence, see Estelle v. Williams, 425 U.S. 501, 504, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), security measures should be no greater than necessary under the circumstances to ensure security. See, e. g., United States v. Samuel, 431 F.2d 610, 615–16 (4th Cir. 1970); Burwell v. Teets, 245 F.2d 154, 168 (9th Cir.), cert. denied, 355 U.S. 896, 78 S.Ct. 271, 2 L.Ed.2d 194 (1957). Looking first to the rotation of guards every fifteen minutes, it is difficult to conceive of any safety function served thereby. Thus, the reasoning of Estelle v. Williams, supra, 425 U.S. at 505, 96 S.Ct. 1691, which distinguishes between the use of physical restraints for safety reasons and "compelling an accused to wear jail clothing [which] furthers no essential state policy" is equally persuasive here. Moreover, the blanket use of four armed guards, one stationed at Hardee's rear, without a showing that the defendant posed an immediate threat to the peace and order of the trial certainly does not reveal an attempt to minimize possible prejudice to the defense. See Dorman v. United States, 140 U.S.App.D.C. 313, 325–326, 435 F.2d 385, 397–98 (1970) (en banc). As stated in Kennedy v. Cardwell, 487 F.2d 101, 108–09 (6th Cir. 1973), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974):

The general rule derived from these decisions is that a defendant has a right to be tried in an atmosphere free of partiality created by the use of excessive guards except where special circumstances, which in the discretion of the trial judge, dictate added security precautions. One reason underlying this right is that guards seated around or next to the de-

fendant during a jury trial are likely to create the impression in the minds of the jury that the defendant is dangerous or untrustworthy. *See McCloskey v. Boslow,* 349 F.2d 119 (4th Cir. 1965); *Dennis v. Dees,* 278 F.Supp. 354 (E.D.La.1968). Also the placement of guards in relation to the defendant could materially interfere with his ability to consult with counsel. However, the use of guards for security purposes, when wisely employed, provides the best means for protecting a defendant's fair trial right and only in rare cases would greater security precautions be warranted. Since guards can be strategically placed in the courtroom when more than normal security is needed and *can be hidden in plainclothes, the jury never needs to be aware of the added protection* so that *no prejudice would adhere to the defendant.* [Footnotes omitted; emphasis added.]

Here, the only reason for visibly surrounding the defendant with guards was his inability to make bail. In short, less drastic means of security would have sufficed and, as in *United States v. Jackson,* 549 F.2d 517, 527 & n. 8 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977), and *United States v. Estremera,* 531 F.2d 1103, 1113 (2d Cir.), *cert. denied,* 425 U.S. 979, 96 S.Ct. 2184, 48 L.Ed.2d 804 (1976), several precautions could have been taken to shield the jury from awareness of the security measures, including the use of nonuniformed officers. There are other cases, but there is no point in belaboring the obvious.