DECISION AND JUDGMENT ENTRY
This appeal arises from the appellant's robbery conviction by a trial jury and the sentence of the Washington County Court of Common Pleas imposed upon him as a result thereof.
 STATEMENT OF THE CASE
During May 1998, a series of robberies occurred in Marietta, Ohio, and the surrounding areas of Ohio and West Virginia. In each case, a lone white male entered the store, demanded money from the cashier and then fled on foot. Witnesses at each robbery described the robber as a white male in his early twenties with short brown or light-colored hair. Some of the witnesses also described tattoos on the robber's neck and hands. In most of these instances, the robber appeared to have a gun tucked under his shirt, although he never actually displayed a weapon.
Lieutenant Jeffery Seevers of the Washington County Sheriffs Office received information from two anonymous sources that Defendant-Appellant Jamie Lupo, Shane McCoy, and Matt McCoy were involved in the robberies. One of these sources identified the appellant as being the robber in a photograph taken from a surveillance video from one of the robberies.
Police officers investigating the robberies commenced surveillance of the trailer where the appellant and the McCoys were residing at that time. On May 26, 1998, officers arrested the appellant and the McCoys as the three were driving away from the trailer in a brown van. Inside the van, officers discovered several shirts and hats that were similar to apparel worn in a number of the area robberies.
The Washington County Grand Jury indicted the appellant on one count of robbery in violation of R.C. 2911.02(A)(2), a second-degree felony. The sole count against the appellant involved the May 25, 1998, robbery of the Duke and Duchess gas station and convenience store in Marietta, Ohio.
Prior to trial, the Washington County Sheriffs Office requested permission to shackle the appellant during the trial. The trial court held a hearing on the request just before the beginning of trial on September 1, 1998. At this hearing, the appellee presented testimony that the appellant had released himself from a waist chain at the jail and attempted to assault certain sheriffs deputies. Appellant threatened the deputies, warning them that he had nothing to lose because "some Yankee is going to kill him." Appellee argued that this incident established that the appellant was a threat to himself or others, as well as an escape risk, unless he was restrained during the trial. The trial judge agreed that the appellant posed a risk of escape, citing the fact that he had managed to slip out of restraints at the jail. The court ruled that the appellant would have his legs shackled during trial but that every effort would be made to avoid drawing the attention of the jury to the shackles.
The robbery case was tried to a jury beginning on September 1, 1998. At trial, the appellee presented testimony that the appellant had bragged to friends about robbing the Duke and Duchess store, as well as committing other robberies. Appellee also presented testimony from two investigating officers who linked the appellant to the Duke and Duchess robbery, as well as several other robberies in the Marietta, Ohio, area that had occurred during a one-week period in May 1998. The officers testified that investigators seized several items of clothing that were similar to that worn by the offender during several other robberies. However, the appellee presented no witnesses to the other robberies who identified the appellant as the perpetrator.
On September 3, 1998, the jury returned a guilty verdict against the appellant for the robbery of the Duke and Duchess store, the sole count of the indictment. On October 14, 1998, the trial court sentenced the appellant to a maximum term of eight years in prison. Appellant filed a timely notice of appeal, presenting four assignments of error for our review.
 I. THE TRIAL COURT ERRED IN REQUIRING APPELLANT TO BE SHACKLED DURING HIS JURY TRIAL.
 II. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO INTRODUCE EVIDENCE CONCERNING SEVERAL ROBBERIES WHICH HAD TAKEN PLACE IN MARIETTA, OHIO, AND PARKERSBURG, WV, DUPJNG THE MONTH PRIOR TO THE ROBBERY FOR WHICH APPELLANT WAS TRIED.
 III. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 IV. THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO A MAXIMUM PRISON TERM OF EIGHT YEARS.
 OPINION I.
Appellant's First Assignment of Error alleges that the trial court's decision to have him shackled during trial deprived him of a fair trial. The trial court ordered that the appellant wear leg irons during the trial after the Washington County Sheriffs Office expressed concerns over the potential safety and flight risk that the appellant posed. The trial court held a full hearing on this issue before reaching its decision.
The decision of whether or not to physically restrain a criminal defendant during trial involves a delicate balance of competing interests. On the one hand, criminal defendants are entitled to a presumption of innocence, which necessarily includes the "garb ofinnocence." Kennedy v. Cardwell (C.A.6, 1973), 487 F.2d 101, 104-105. The Supreme Court of Ohio has recognized that the act of shackling a defendant tends to erode the presumption of innocence, such that shackling is only appropriate in extraordinary circumstances. State v. Kidder
(1987), 32 Ohio St.3d 279, 285, 513 N.E.2d 311, 318. On the other hand, trial courts possess inherent power to maintain the order and dignity of their proceedings and also have an obligation to ensure the safety of the courtroom.
It is well settled that, in order to maintain order within the courthouse, the decision of whether or not to shackle a defendant during trial is left to the sound discretion of the trial court.State v. Woodards (1966), 6 Ohio St.2d 14, 22-23, 215 N.E.2d 568,576. However, trial courts must exercise their discretion with great care and may not merely defer to the wishes of prosecutors or law enforcement officials. State v. Carter (1977), 53 Ohio App.2d 125,372 N.E.2d 622 (holding that the trial court may not establish a general policy of shackling inmates charged with new offenses). In addition, we have held that the trial court should hear testimony on the necessity of shackling a defendant and make findings on the record to support its decision to order shackling. State v. Curry (Sept. 30, 1997), Scioto App. No. 95CA2339, unreported.
In the instant case, the appellee presented testimony that the defendant had threatened prison guards and told them that he had nothing to lose because a "Yankee" was going to kill him. In addition, there was testimony that the appellant had managed to free himself from a waist chain while he was in jail awaiting trial.
The trial court expressed concern over the fact that the appellant was capable of freeing himself from a waist chain. Therefore, the court found that the appellant posed an escape risk. Based on this finding, the court ordered that the appellant be shackled with leg irons during trial.
We should note that the appellant neither requested a jury instruction on the shackles, nor polled the jury on whether they were aware that the appellant was wearing shackles. As a result, the appellant has waived any error on the part of the trial court. State v. Bonan (Dec. 24, 1992), Crawford App. No. 3-92-33, unreported. However, nothing in the record before us indicates that the trial court abused its discretion in ordering that the appellant be shackled during the trial.
The trial court heard testimony that the appellant had threatened prison guards, believed someone was planning to kill him, and had shown an ability to escape from a waist chain. These factors establish that the appellant posed a credible risk of escape, as well as a danger to the safety of everyone in the courtroom. In response to this risk, the trial court reasonably determined that the appellant should be shackled but ordered that every measure be taken to make the shackles as unobtrusive as possible. The appellant was in leg irons only, which are less obvious than handcuffs, and he was permitted to wear regular street clothes. In addition, the trial court ordered that every effort would be made to avoid drawing attention to the appellant's shackles, and it appears from the record that the attorneys and court personnel were mindful of this order throughout the trial. Under these circumstances, we find that the trial court acted appropriately and within the proper bounds of its discretion in ordering that the appellant be shackled in leg irons during the trial.
Appellant's First Assignment of Error is OVERRULED.
 II.
Appellant's Second Assignment of Error claims that the trial court erred in permitting testimony that implicated the appellant in crimes other than the Duke and Duchess robbery. The trial court permitted testimony about the other robberies over the appellant's objection, reasoning that the identity of the individual who robbed the Duke and Duchess store was the only real issue at trial. The court found that evidence linking the appellant to several robberies in the area was probative of his identity as the person who robbed the Duke and Duchess store.
Several of the appellee's witnesses offered testimony that implicated the appellant in various robberies. Alisa Johnson, the appellant's former girlfriend, testified that the appellant had bragged about robbing the Duke and Duchess store, as well as robbing a GoMart in Williamstown, West Virginia. Stanley Sapp, the appellant's cellmate in the Washington County Jail, testified that the appellant had admitted to robbing the Duke and Duchess store, as well as an Applebee's and a Shoney's in Parkersburg, West Virginia. According to Sapp, the appellant claimed to have taken approximately $1, 000 from Shoney's but did not get any money in the Applebee's robbery.
The trial court also permitted Sergeant Richard Meek of the Marietta Police Department to testify about details of several robberies in the Marietta area in the week preceding the Duke and Duchess robbery. Sergeant Meek testified at the time of the Duke and Duchess robbery, West Virginia authorities were investigating robberies at a GoMart in Williamstown, a Shoney's in Parkersburg and an Applebee's in Vienna. A lone white male committed each robbery. In addition, Sergeant Meek testified that the robber did not get any money in the Applebee's robbery.
Appellee presented other testimony that linked the appellant to several of the area robberies. Sergeant Meek testified that several items of clothing were seized from the van the appellant was driving at the time of his arrest, including a black and white checked shirt and a do-rag, which were similar to the shirt and hat worn by the robber of the Duke and Duchess. Officers also seized a brown pullover sweatshirt similar to the shirt worn in the Applebee's robbery and a red, white and blue golf-style shirt similar to the shirt worn in the Shoney's robbery. In addition, Detective Greg Nohe of the Marietta Police Department testified that he was aware of no robberies by a lone white male in the Marietta area subsequent to the appellant's arrest.
Appellant argues that the testimony concerning the West Virginia robberies was impermissible "other acts" evidence that should have been excluded under Evid.R. 404. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Evid.R. 404 (B). Evidence of other crimes may be admissible for other purposes, however, such as proof of identity. Id. Appellant argues that Sergeant Meek and Detective Nohe's testimony did not help to identify the appellant as the Duke and Duchess robber because no evidence directly identified the appellant as the perpetrator of the other robberies. In addition, the appellant argues that Johnson and Sapp both testified that the appellant admitted to committing the Duke and Duchess robbery, so their testimony concerning other robberies was not necessary to establish identity.
Appellee argues that the Johnson and Sapp testimony was not "other acts" evidence because the "act" involved in the testimony was the appellant's statements and not the other robberies. According to the appellee, the appellant's statements about the other robberies involve a question of hearsay and not "other acts" evidence. Appellee argues that the appellant's statements are an admission by a party opponent, so they are admissible under Evid.R. 801 (D)(2). In the alternative, the appellee argues that evidence of the other robberies is admissible under Evid.R. 404 (B) because it proves the appellant's motive, intent, preparation, plan or identity.
Both of the parties mischaracterize the issue with respect to the admission of "other acts" evidence against the appellant. Appellee attempts to limit our inquiry in this assignment of error to the Johnson and Sapp testimony and portrays the issue as a question of hearsay. Appellant attempts to analyze the testimony of Johnson and Sapp separate from that of Sergeant Meek and Detective Nohe. It is clear that the appellee offered the appellant's admissions, along with the testimony of Sergeant Meek and Detective Nohe, in order to prove that the appellant was responsible for a series of robberies in the Marietta area in May 1998. The issue is whether all of the evidence that the appellant committed other robberies, viewed as a whole and offered to prove that he committed the Duke and Duchess robbery, is admissible under one of the exceptions in Evid.R. 404 (B).
Decisions regarding the admissibility of evidence are within the sound discretion of the trial court. State v. Lowe (1994),69 Ohio St.3d 527, 531, 634 N.E.2d 616, 619-620. An appellate court will not interfere with the trial court's determination that evidence is admissible absent an abuse of discretion. Furthermore, an abuse of discretion requires "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams
(1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149. Still, Evid.R. 404 (B) is an exception to the common law, and it must be construed against admissibility. State v. Broom (1988), 40 Ohio St.3d 277,533 N.E.2d 682, paragraph one of the syllabus.
"Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404 (B)." State v. Jamison (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, syllabus. The other acts "need not be the same as or similar to the crime charged" in order to be admissible. Id. However, the other acts should establish a modus operandi that shares common features with the charged crime and is identifiable with the defendant. State v. Lowe (1994), 69 Ohio St.3d 527, 531,634 N.E.2d 616, 619-620. In addition, there must be substantial proof that the defendant committed the other acts. Id. at 530,634 N.E.2d at 619.
In the instant case, the robbery of the Duke and Duchess store was the last in a series of similar robberies that occurred in the Marietta area in May 1998. All of the robberies involved a single individual who acted as if he had a gun under his shirt and fled from the scene on foot. In each case, witnesses described the robber as a white male in his early twenties with short brown hair. All of the robberies occurred in the Marietta area within a period of approximately one week. Appellant bragged to Alisa Johnson and Stanley Sapp that he committed several of the robberies. Also, when the appellant was arrested, the police seized shirts and hats from the van he was driving that were similar to clothing worn by the perpetrator of some of the robberies.
Taken together, this testimony establishes an identifiablemodus operandi that links the Duke and Duchess robbery to the other robberies committed in the Marietta area during May 1998. There is also substantial evidence that the appellant committed the West Virginia robberies. Based on a consideration of all of the testimony, taken as a whole, we find that the trial court did not abuse its discretion in admitting evidence of the other robberies.
Appellant's Second Assignment of Error is OVERRULED.
 III.
Appellant's Third Assignment of Error alleges that his conviction is against the manifest weight of the evidence. In determining whether a judgment is against the manifest weight of the evidence, an appellate court must consider all of the evidence, judge credibility of witnesses and determine for itself what inferences to draw. State v. Thompkins (1997), 78 Ohio St.3d 380,387, 678 N.E.2d 541, 546-47. The court essentially acts as an extra juror to determine if the trier of fact reached the right verdict based on all of the evidence. Id. We must remember that the jury was in the best position to view the witnesses and judge their credibility. A judgment should be reversed as against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction."State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717,720-721.
Appellant argues that the evidence presented against him is inherently untrustworthy. The pictures from the Duke and Duchess store's surveillance camera are unclear, and even the store clerk who witnessed the robbery was unable to positively identify the appellant as the robber. The police were unable to find any identifiable fingerprints in the store, and there is no other physical evidence that directly links the appellant to the robbery.
Alisa Johnson and Stanley Sapp testified as witnesses for the state that the appellant bragged to them about committing the robbery. However, the appellant argues that both Johnson and Sapp had reasons to fabricate their stories, so their testimony is not credible. Appellant argues that Johnson has a motive to lie because the appellant slept with Johnson as well as one of her friends, Jennie Luke. In addition, the appellant claims that Johnson could have lied in an attempt to help her parents, who were being investigated for food stamp fraud in May 1998.
Appellant also argues that Sapp had a motive to lie in order to obtain leniency on a burglary charge. According to the appellant, Sapp could have fabricated the story from news accounts of the robbery and by looking at the appellant's legal papers. Deputy Scott Fitch, who originally interviewed Sapp about the appellant's confession, testified that Sapp asked for assistance in having his sentence reduced. However, Sapp had already been convicted and sentenced, so Deputy Fitch told him that the state could not make any deals in exchange for his testimony.
This is not an exceptional case where the evidence weighs so heavily against the jury's verdict that we would be justified in overturning the appellant's conviction. Certainly there are weaknesses in the case against the appellant, and trial counsel made every effort to exploit those weaknesses. The surveillance video and the clothing found in the appellant's van, while not conclusive, point to the appellant as being the perpetrator of the Duke and Duchess robbery. Appellant may be correct in arguing that Johnson and Sapp each had motives to fabricate their testimony. However, the jury was in a far better position than this court to view the witnesses and judge their credibility. There is nothing in the record that leads us to believe that the jury clearly lost its way in this case. We find, therefore, that the appellant's conviction is not against the manifest weight of the evidence.
Appellant's Third Assignment of Error is OVERRULED.
 IV.
Appellant's Fourth Assignment of Error alleges that the trial court erred in imposing a maximum sentence against the appellant. Essentially, the appellant argues that the trial court failed to consider the seriousness of the robbery. There was no actual force used; and, while the store clerk believed the robber had a gun, there is no evidence that the appellant actually possessed a gun or any other weapon. According to the appellant, the trial court should not have imposed a maximum term because this was not the worst form of robbery.
Traditionally, sentencing decisions have been left to the sound discretion of the trial court. With the passage of Senate Bill 2, the General Assembly has imposed a series of requirements on sentencing courts and narrowed the scope of the sentencing court's discretion. Specifically, before imposing a maximum sentence against an offender, the trial court must find either that the offender committed one of the worst forms of the offense or that the offender poses the greatest likelihood of recidivism. R.C. 2929.14(C). In weighing the seriousness of the offense and the risk of recidivism, the court must consider the factors listed in R.C. 2929.12. In addition, the trial court must state its reasons for imposing a maximum prison sentence. R.C. 2929.19
(B)(2)(d).
In the instant case, the appellant was convicted of robbery, a second-degree felony that carries a possible sentence of two to eight years in prison. R.C. 2929.14(A)(2). The trial court found that the appellant poses the greatest likelihood of committing future crime and sentenced the appellant to a maximum prison term of eight years. The trial court cited a number of factors as bases for its imposition of a maximum sentence against the appellant. The court cited the appellant's extensive criminal history, as well as his history of alcohol and drug abuse, which was related to the robbery. In addition, the court found that the appellant had not responded to sanctions imposed for previous offenses.
Contrary to the appellant's argument, the court did not have to find that the appellant committed one of the worst forms of robbery in order to sentence him to a maximum prison term. Under R.C. 2929.14(C), the trial court may impose a maximum sentence against an offender who poses the greatest likelihood of recidivism, as the trial court found in this case. The court made the finding required by R.C. 2929.14(C) and stated reasons to support that finding on the record. In addition, there is evidence in the record to support the trial court's finding. We find that the trial court complied with the statutory guidelines in imposing a maximum sentence of eight years in prison against the appellant, thereby rendering this assignment of error without merit.
Appellant's Fourth Assignment of Error is OVERRULED.
JUDGMENT AFFIRMED.