IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 26, 2020

**DAVID LOUIS WAY v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Sevier County**
**No. 19267-II James L. Gass, Judge**

_____

**No. E2020-00049-CCA-R3-PC**

_____

The Petitioner, David Louis Way, appeals the denial of his petition for post-conviction relief from his convictions for burglary, theft over $1000, vandalism over $1000, and possession of burglary tools. He asserts that his right to due process was violated at trial because he was ordered to wear leg restraints, and that he received ineffective assistance of counsel. After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and NORMA MCGEE OGLE, J., joined.

Brett A. Cole, Seymour, Tennessee, for the appellant, David Louis Way.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and George C. Ioannides, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Petitioner was convicted of burglary, theft over $1000, vandalism over $1000, and possession of burglary tools, and sentenced to thirty-six years in confinement as a career offender. State v. David Way, No. E2016-02289-CCA-R3-CD, 2018 WL 733220, at *1 (Tenn. Crim. App. Feb. 6, 2018). The Petitioner appealed to this court, arguing that the trial court erred in denying his motion to suppress evidence due to the State's failure to establish a proper chain of custody and that the evidence was insufficient to sustain his convictions. Id. This court affirmed the Petitioner's convictions, and no application for

permission to appeal was filed with the Tennessee Supreme Court. Id. The underlying facts of the case were succinctly recited by this court on direct appeal as follows:

> In the early morning hours of August 19, 2012, police responded to a burglary alarm at Gatlinburg-Pittman High School (GPHS). As part of their investigation, officers viewed video surveillance which showed two masked individuals dressed in camouflage clothing entering the school at approximately 2:30 a.m., carrying crow bars, chisels, and hammers. One of the individuals depicted in the video walked with a distinctive gait or "heel kick," which was later determined to be consistent with how Millard Spurgeon, [the Petitioner]'s co-defendant, walked. The video further showed one of the individuals using the tools to pry open the automatic teller machine (ATM) inside the school, from which more than $1,000 was stolen. Vending machines at the school were also damaged. On the same day of the school burglary, [the Petitioner] and his co-defendant were at a local store near the school wearing similar clothes to those worn by the perpetrators and spending a large amount of money. The store clerk notified the police, and [the Petitioner] eventually consented to a search of his vehicle. Tools recovered from [the Petitioner]'s vehicle were examined by the Tennessee Bureau of Investigation (TBI) and determined to be consistent with tools that created the marks on the ATM. Paint found on the tools was found to be consistent with the paint found on the ATM. [The Petitioner] and his co-defendant were subsequently charged with the instant offenses . . . .

Id.

Prior to trial, the Petitioner's appointed counsel filed a motion to allow the Petitioner "to appear at trial, including voir dire, in civilian clothes instead of a prison uniform and with minimal restraints (i.e.[,] shackles on his feet only)." The motion also requested that the Petitioner "be permitted to shave and shower each day before any court proceeding" and that "measures be taken to ensure that the jurors never see him in restraints in or out of the courtroom."

In the attached memorandum of law, counsel asserted that the use of visible physical restraints was generally prohibited unless the court determined, in its discretion, that the restraints were justified by a legitimate State interest. Counsel recognized that the Petitioner "currently faces escape charges that would justify minimal restraints, such as leg restraints, or other similar confinement," and argued that

> [p]roviding adequate and routine courtroom security coupled with the use of leg restraints serve as reasonable alternatives to fully restraining [the

Petitioner], but only if he is escorted into the courtroom in such a manner that the jurors do not see restraints, and the number of security personnel is not so great as to arouse questions in the minds of jurors of [the Petitioner]'s guilt.

At a pretrial hearing, after discussing other matters, counsel turned the court's attention to the motion regarding physical restraints:

Okay. The next [motion] is – this one is definitely subject to Your Honor's approval, as the rest of them, but this one more so. My client has filed a motion requesting that he be in minimum restraints with street clothes for the purposes of trial. We understand that he is facing his escape charge and that the Court would probably want some kind of restraints on him, ankle shackles or something of that nature. But we would ask that he be allowed to shave, clean up, wear his street clothes to trial, and then somehow we work out with the sheriff's department as far as restraints on how to be able to do that, getting him in here without the jurors seeing it.

The trial court ruled that it was "not a problem at all" for the Petitioner to wear civilian clothing but that "[g]iven the history and the escape charges and so forth, certainly he's going to have to wear the ankle chains." The court observed that it would be difficult to completely conceal the restraints from the jury but that "we can have him brought in early, is the only way to do it."

Following the trial and direct appeal, the Petitioner filed a timely pro se petition for post-conviction relief and, later, an amended petition was filed by appointed counsel. The post-conviction court conducted an evidentiary hearing on the issues raised in the petition. We will attempt to constrain our recitation of the evidentiary hearing testimony to the issues relevant to this appeal: that the Petitioner's right to due process was violated because he was ordered to wear leg restraints and that he received ineffective assistance of counsel because counsel failed to object to the use of physical restraints, failed to call exculpatory witnesses, and failed to obtain the Petitioner's medical records.

The Petitioner's trial counsel testified that she was appointed to represent the Petitioner in September of 2014. Counsel recalled that the Petitioner gave her his version of the events and claimed that he "had the flu or something like that." Counsel did not recall the Petitioner ever requesting that she obtain his medical records in this case, although he did request medical records relevant to another case. In addition, the State introduced video footage of the Petitioner's arrest, which showed the Petitioner walking around and looking capable of committing the crimes of which he was accused.

Regardless, counsel did not think that the Petitioner's possibly "having the flu was relevant to whether he committed the burglary. People can commit burglary sick."

Counsel stated that the Petitioner's mother, Ann Way, testified on the Petitioner's behalf at trial that the Petitioner was at home the night of the burglary and, therefore, could not have committed the offenses, and also that he was sick. Counsel remembered that the Petitioner informed her that an individual named Harold Dunn had information potentially relevant to the case. Counsel investigated Mr. Dunn, but she did not think that the information Mr. Dunn could provide was relevant because he was just going to testify that the Petitioner picked him up the morning after the burglary and did not give the Petitioner an alibi for the time of the offense. Mr. Dunn's testimony would have also been duplicative because Ms. Way was already going to testify as to the Petitioner's whereabouts the morning after the burglary, and Mr. Dunn, unlike Ms. Way, was impeachable because of his criminal record.

Counsel did not recognize the names of Harry Sine or Mary Green. Counsel was familiar with Janie Allen and did not believe that she had any information relevant to this particular case. Counsel recalled that the name Chris Yazel was listed in the State's discovery materials as an "associate" of the Petitioner but not as a suspect. Counsel remembered that she spoke to Kathy Spurgeon, the co-defendant's mother, and Ms. Spurgeon apparently claimed that one of her other sons assisted the co-defendant in burglarizing the school. However, Ms. Spurgeon could not provide any distinguishing characteristics or reasoning as to why she thought it was her son and not the Petitioner on the surveillance video. Ms. Spurgeon simply insisted, "I just know my son." Counsel felt that Ms. Spurgeon was not a credible witness.

Counsel recalled that before trial, she filed a motion requesting that the Petitioner appear in civilian clothing and with minimal physical restraints. She told the Petitioner that she did not see the trial court allowing him to sit through the trial without some form of restraints, based on his escape charge. Counsel acknowledged that in her motion, she cited case law that it was up to the court to determine under what circumstances it was appropriate for an accused to wear restraints during trial but that she basically conceded that some restraints were necessary without leaving it to the court's determination. The court ordered that ankle restraints were necessary based on the Petitioner's escape charge but that efforts would be made to conceal the restraints from the jury as much as possible.

Counsel testified that she did not request a special jury instruction about the Petitioner's restraints because "we hid them from the jury. I wasn't going to tell them that he had shackles if they didn't see them." Her strategy was to hide the restraints from the jury and "if a juror happened to see it somehow and brought our attention to that, then we would address it and we would do a jury instruction."

Counsel stated that the trial took place in a courtroom configured with the jury box directly in front of the judge, the State's table to the left of the jury box, and the defense's table to the right of the jury box. Each table had four legs with "nothing barricading what's underneath the tables[.]" Counsel recalled that the Petitioner was brought into the courtroom "pretty early prior to trial," and she and her investigator erected a barricade under the defense table with their briefcases, bankers' boxes and winter coats. She elaborated that they "had a ton of stuff," and the way they positioned the items looked "natural."

Counsel recalled that the Petitioner stood up "maybe twice" during the trial, once during the jury-out Momon hearing and the other during her closing argument, but he did not move around while standing. She said that the Petitioner was not taken out of the courtroom until the jury had been excused. According to counsel, the Petitioner "never voiced a disagreement to [her]" about the use of ankle restraints. Counsel did not raise the use of restraints as an issue on direct appeal.

The Petitioner testified that he "had pneumonia at the time [of the incident]. It was diagnosed two days after the event . . . [at] LeConte Medical Center." The Petitioner said that he discussed obtaining those medical records with counsel "many times." He claimed that he obtained the records on his own, but counsel told him that she could not use them because he obtained them without a subpoena. He stated that counsel "issued no subpoenas for nothing."

The Petitioner testified that his co-defendant's mother, Kathy Spurgeon, testified at his "violation hearing . . . that that was not who was on the video[.]" He stated that "Mary Green was in the audience and tried to approach [his prior counsel] . . . and write a statement out concerning who the other person was on the video, that she had proof of it." According to the Petitioner, Ms. Green was going to identify the other person in the video with the co-defendant as her nephew, Chris Yazel, not the Petitioner. The Petitioner said that Chris Yazel "was listed as a suspect in all the crimes that I was accused of at that time." The Petitioner maintained that he had many conversations with counsel about Ms. Green.

The Petitioner testified that a man named Harry Sine bought two vehicles at an auction in Knoxville the night of the burglary and asked the Petitioner to pick them up the next morning. According to the Petitioner, Harold Dunn was going to help him pick up the cars but, when he arrived at Mr. Dunn's house around 8:30 that morning, Mr. Dunn was not feeling well and asked if Mr. Dunn's nephew, the co-defendant, could help the Petitioner instead. The Petitioner said that Mr. Dunn would have testified as to what time the Petitioner arrived at his house that morning and that he sent the Petitioner to pick up the co-defendant. The Petitioner recounted that he and the co-defendant went to a market

to wait on Mr. Sine in order to get the keys to the two cars, and that was where they were arrested a short while later. The Petitioner maintained that he had conversations with counsel regarding Mr. Sine and Mr. Dunn.

The Petitioner testified that Janie Allen was his girlfriend at the time of the incident and that she saw him two days after the event and noticed he was sick. The Petitioner acknowledged, however, that he never had a conversation with counsel about testimony Ms. Allen could possibly provide.

The Petitioner testified that he did not agree with counsel's conceding that minimal restraints were appropriate. He admitted that counsel took actions to attempt to conceal the restraints from the view of the jury but said that what counsel "doesn't realize is that every time the jury leaves the courtroom and reenters the courtroom on that side . . . that we have to stand up. When I stand up, they can see me plain as day, coming down the stairs, looking behind that table right there."

At the conclusion of the evidentiary hearing, the post-conviction court issued extensive oral findings of fact and conclusions of law, later followed by a written order, in which it denied the petition for post-conviction relief. With respect to the claims raised in this appeal, the court ruled that the Petitioner's right to due process was not violated by use of minimal physical restraints at trial because of the Petitioner's extensive criminal history and pending escape charge. The court noted that nothing in the record indicated that the jury saw the Petitioner's restraints and that to have seen the restraints, the jurors would have had to have been looking under the defense table while trying to descend the steps out of the jury box, which the court found to be "nonsensical."

The court also found that counsel "met every standard for effective assistance of counsel and went above that to provide more than adequate defense representation for [the Petitioner]." As to the Petitioner's claim about the failure to present witnesses, the court found that the witnesses suggested by the Petitioner were either impeachable or could only testify about events that happened at times other than when the crime occurred. As to counsel's failure to obtain the Petitioner's medical records to show that he was sick, the court observed that there was video evidence the jury could watch and make its own determination whether the Petitioner "was impaired [or] suffering from some inability to move about[.] The court further noted that had counsel called the witnesses who would testify about the Petitioner's driving cars to or from Knoxville the day after the burglary, such testimony "would have defeated any claim that he was too sick" to commit the burglary. The court concluded that because counsel was not deficient in her performance, an analysis of prejudice was unnecessary. However, the court added that, regardless, none of counsel's actions caused the Petitioner prejudice.

**ANALYSIS**

On appeal, the Petitioner argues that his right to due process was violated because he was ordered to wear leg restraints and that he received ineffective assistance of counsel because counsel failed to object to the use of physical restraints, failed to call exculpatory witnesses, and failed to obtain his medical records.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

**I. Due Process Claim**

The Petitioner argues that his right to due process was violated because he was ordered to wear leg restraints, which could have been seen by the jury. He also claims that his trial counsel was ineffective because she failed to object to the use of physical restraints, an issue that we will address in the next section of our analysis.

As a "free-standing" claim, this issue is waived as a ground for post-conviction relief because it was not presented on direct appeal:

A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless: (1) the claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of the right; or (2) the failure to present the ground was the result of state action in violation of the federal or state constitution.

Tenn. Code Ann. § 40-30-106(g); see Mobley v. State, 397 S.W.3d 70, 104 (Tenn. 2013) (determining that the petitioner waived his due process claim regarding the use of a stun belt for failing to raise the issue in the trial court or on direct appeal, and that such issue was more properly considered in the context of the petitioner's ineffective assistance of counsel argument). The Petitioner is not entitled to relief on this stand-alone issue.

In any event, even if not waived, the trial court did not abuse its discretion in ordering the use of minimal physical restraints. The United States Supreme Court has noted that "[o]ne of the essential due process safeguards that attends the accused at his trial is the benefit of the presumption of innocence. . . ." See Estelle v. Williams, 425 U.S. 501, 517 (1976) (Brennan, J., dissenting) (stating that identifiable prison garb "surely tends to brand [the accused] in the eyes of the jurors with an unmistakable mark of guilt"). "The sight of shackles and gags might have a significant effect on the jury's feelings about the defendant," and they should be used as a last resort. Illinois v. Allen, 397 U.S. 337, 344 (1970). However, the decision to shackle a defendant lies within the discretion of the trial court; therefore, the test on review is abuse of discretion. See Kennedy v. Cardwell, 487 F.2d 101, 107 (6th Cir. 1973).

Here, the trial court considered that the Petitioner had an extensive criminal history and a pending escape charge and determined that the least intrusive method of securing the courtroom was to place the Petitioner in ankle shackles. The court stressed the importance of concealing the shackles from the jury and had the Petitioner brought into the courtroom before the jury arrived. The Petitioner was allowed to dress in civilian clothes for trial, and there was no evidence that the jury noticed the restraints. Counsel took steps to obscure sight of the restraints from the jury's view and, as noted by the post-conviction court, the scenarios under which the jury could see the restraints while entering and exiting the courtroom were unlikely. The trial court did not abuse its discretion in ordering the use of minimal physical restraints at trial.

## II. Ineffective Assistance of Counsel

The Petitioner argues that he received ineffective assistance of counsel because counsel: (1) did not object to the use of physical restraints; (2) failed to call exculpatory witnesses; and (3) failed to obtain his medical records.

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of

counsel that is applied in federal cases also applies in Tennessee).  The <u>Strickland</u> standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms."  <u>Goad v. State</u>, 938 S.W.2d 363, 369 (Tenn. 1996) (citing <u>Strickland</u>, 466 U.S. at 688; <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, <u>see</u> <u>Strickland</u>, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation.  <u>See</u> <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982).  The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694.

Courts need not approach the <u>Strickland</u> test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; <u>see also</u> <u>Goad</u>, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.").

## A.  Physical Restraints

With regard to the Petitioner's claim that counsel was ineffective for failing to object to the use of physical restraints, counsel testified that she did not see the trial court allowing the Petitioner to sit through the trial without some form of restraints based on his escape charge, and she got ahead of the matter by arguing for extremely minimal restraints. Essentially, counsel did not make a frivolous argument that could not be supported by the law or facts.  Moreover, counsel discussed the issue with the Petitioner and recalled that the Petitioner "never voiced a disagreement to [her]" about the use of ankle restraints.

Although the Petitioner claimed that he objected to the use of restraints, the post-conviction court implicitly accredited counsel's testimony over that of the Petitioner. Counsel took efforts to conceal the restraints from the jury by erecting a barricade under the defense table with briefcases, bankers' boxes and winter coats, and the Petitioner never moved around while standing and was not taken out of the courtroom until the jury had been excused. We conclude that counsel did not render deficient performance but, regardless, the Petitioner has not proven that any deficiency caused him prejudice.

## B. Exculpatory Witnesses

With regard to the Petitioner's claim that counsel failed to call exculpatory witnesses, the Petitioner did not present any such witness testimony at the post-conviction hearing and, thus, failed to establish prejudice. In order to succeed on a claim that counsel did not properly investigate or call favorable witnesses at trial, a petitioner must generally elicit favorable testimony from those witnesses at the evidentiary hearing, as a post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Moreover, the record shows that counsel made strategic decisions with regard to the potential witnesses to which the Petitioner made her aware, and counsel called as a witness at trial the only person who claimed to know where the Petitioner was during the time of the burglary—his mother. The other witnesses identified by the Petitioner could not have corroborated his alibi.

## C. Medical Records

With regard to the Petitioner's claim that counsel failed to obtain his medical records, the Petitioner did not raise the claim in his post-conviction petition and, therefore, has waived it on appeal. Waiver notwithstanding, counsel did not render ineffective assistance because the failure to obtain the medical records did not prejudice the defense. Even if the Petitioner was sick, as counsel explained, "[p]eople can commit burglary sick." There was video evidence presented at trial of the Petitioner's arrest, which, as acknowledged by counsel, showed the Petitioner walking around and looking capable of committing the crimes of which he was accused. Moreover, under the Petitioner's version of the events, he was well enough to drive to Mr. Dunn's house with the intention of traveling to Knoxville to conduct business for Mr. Sine.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of the petition.

_____
ALAN E. GLENN, JUDGE